UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARVIN KING, et al.,

        Plaintiffs,

vs.

BLACKHAWK RECOVERY AND
INVESTIGATIONS, LLC, et al.,

        Defendants.

_____/

Case No. 17-cv-11534
HON. MARK A. GOLDSMITH

## OPINION & ORDER
## GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS (Dkt. 19)

This matter is before the Court on Defendants Oakland County, Michael David, Russell Lewis, and Andrew Moldenhauer's motion to dismiss (Dkt. 19). The issues have been fully briefed and a hearing was held on October 25, 2017. For the reasons set forth below, the Court grants Defendants' motion as to Oakland County, but denies the motion as to David, Lewis, and Moldenhauer.

### I. BACKGROUND

This action arises out of the repossession of Plaintiff Marvin King's vehicle. In April 2016, King spoke with Credit Acceptance to inform the company that he would be a couple days late on his monthly car payment. Am. Compl. ¶ 11 (Dkt. 16). Credit Acceptance informed King that it would accept the late payment, but subsequently changed King's payment plan to require bimonthly payments. Id. ¶¶ 12, 14. This unilateral change served to double King's monthly payment. Id. ¶ 15. Upon learning of this change, King informed Credit Acceptance that he would be unable to meet this new payment schedule. Id. ¶ 16.

1

In the early morning hours of June 3, 2016, Defendant Larry Everson, an employee of Defendant Blackhawk Recovery and Investigations, LLC, arrived at the Meijer in Commerce Township, Michigan, where King works as a merchandiser. Id. ¶¶ 17-18. Blackhawk had contracted with Credit Acceptance to repossess King's vehicle. Id. ¶ 18. Everson drove his tow truck in front of King's vehicle and began to reverse towards it. Id. ¶¶ 24-25. Plaintiff Shelly Kahle was in King's vehicle at the time with her dog and witnessed Everson reversing towards her. Id. Without communicating with Kahle or King, Everson hooked the vehicle onto his tow truck and began lifting the vehicle four to five feet into the air while Kahle and her dog were still inside. Id. ¶¶ 26-34.

Despite Kahle's requests, Everson refused to lower the vehicle. Id. ¶¶ 29-30. Kahle then called King to notify him of the repossession. Id. ¶ 33. When King came outside, Everson was on the phone with the Oakland County Sherriff's Department. Id. ¶ 37. Everson informed the dispatcher that he was attempting to repossess a vehicle, but that Kahle refused to exit the vehicle. Id. ¶¶ 39-40. He also informed the dispatcher that he had the vehicle lifted in the air with Kahle and the dog inside. Id. ¶ 42. In response, the dispatcher confirmed Everson's location and name. Id. ¶ 43. The dispatcher then informed Everson that deputies were on their way and to let her know if King or Kahle gave him any further problems. Id. ¶ 44. The dispatcher also offered to stay on the line with Everson. Id. ¶ 45.

When Defendant officers arrived, they first spoke with Everson. Id. ¶ 54. They then informed King that they were not going to stay at the scene all night, and that the vehicle was no longer his because he failed to make his car payments. Id. ¶ 55. After examining King's registration, the officers demanded that Kahle exit the vehicle. Id. ¶¶ 57-58. In order to allow her to exit, the officers asked Everson to lower the vehicle. Id. ¶ 59. Everson partially lowered the vehicle, after which Kahle exited. Id. ¶¶ 60-61. Once she was out of the vehicle, the officers

instructed Kahle to remove her dog. Id. ¶ 61. Kahle informed the officers that the dog was very protective of her and King. Id. ¶ 62. When Kahle took the dog out of the vehicle, one of the officers put his hand on his gun. Id. ¶ 63. Kahle then asked the officer if he was going to shoot her dog; the officers subsequently threatened to arrest Kahle for disorderly conduct. Id. ¶¶ 64-65. The officers then demanded that King and Kahle move away from the vehicle. Id. ¶ 66. After they complied, Everson took possession of the vehicle and drove off. Id. ¶ 68. King subsequently filed suit, alleging that Oakland County and Defendant officers violated his rights under the Fourth and Fourteenth Amendments.[1]

## II. STANDARD OF REVIEW

To survive a motion to dismiss, a complaint must state a claim to relief that is plausible on its face. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

## III. ANALYSIS

Defendants first argue that the claims against Oakland County should be dismissed because King has failed to allege that he was harmed as a result of a policy, practice, or custom enacted by the county. "A plaintiff raising a municipal liability claim under [42 U.S.C. § 1983] must demonstrate that the alleged federal violation occurred because of a municipal policy or custom." Burgess v. Fischer, 735 F.3d 462, 478 (6th Cir. 2013) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)). The plaintiff must allege an illegal policy or custom in at

---

[1] Kahle also originally alleged violations of her Fourth and Fourteenth Amendment rights. She later withdrew these claims in response to Defendants' motion to dismiss.

3

least one of four ways: (i) the existence of an official policy or piece of legislation; (ii) an official with final decision-making authority ratified an illegal action; (iii) a policy of inadequate training or supervision; and (iv) a custom of tolerance or acquiescence of federal rights violations. See Thomas v. City of Chattanooga, 398 F.3d 426, 429 (6th Cir. 2005). "[P]olicy or custom does not have to be written law; it can be created 'by those whose edicts or acts may fairly be said to represent official policy.'" Paige v. Coyner, 614 F.3d 273, 284 (6th Cir. 2010) (quoting Monell, 436 U.S. at 694).

King argues that his complaint sufficiently alleges two forms of municipal liability. First, King notes that he alleges a policy of inadequate training. Specifically, King alleges that "[a]s a result of the Oakland County Sherriff's Department's failure to adequately train their officers in civil disputes and vehicle repossession, the officers failed to confirm the presence of a court order and unlawfully assisted in the repossession of the vehicle." Am. Compl. ¶ 82. "A failure-to-train claim, however, requires a showing of prior instances of unconstitutional conduct demonstrating that the [municipality] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." Burgess, 735 F.3d at 478 (quotation marks omitted). "The inadequacy of police training only serves as a basis for § 1983 liability where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." Miller v. Sanilac Cty., 606 F.3d 240, 255 (6th Cir. 2010) (quotation marks omitted). "To establish deliberate indifference, the plaintiff must show prior instances of unconstitutional conduct demonstrating that the County has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." Id. (quotation marks omitted).

King has not alleged any prior instances of unconstitutional conduct that would have put Oakland County on notice that it should be providing training to its officers on how to act when

4

confronted with an attempted repossession. King argues that a pattern of constitutional violations can be inferred based on "the dispatcher's reassuring nature towards Mr. Everson and familiarity of how the officers would handle the situation once they arrived." Pl. Resp. at 13-14. King also argues that "it is reasonable to infer from the officers' uniform helping behavior that this was not an isolated incident of assisting the repossesor, but rather, the county's way of handling repossessions when a breach of peace occurs." Id. at 14. However, it cannot be said that a dispatcher's calm demeanor during a call establishes that there has been a pattern of past misconduct. Even assuming the officers' actions on the scene constituted a constitutional violation, one instance of misconduct cannot be used to establish a pattern of which Oakland County should have been aware. See Miller, 606 F.3d at 255. Because King has not alleged past misconduct that would have put the county on notice, his claim against the county cannot survive a motion to dismiss based on a failure-to-train theory.[2]

King's other theory is that Oakland County maintains a "custom and practice which directs its officers to effectively assist in the repossession of vehicles where a breach of peace has occurred." Am. Compl. ¶ 83. "[W]here no formal policy exists, the critical question is whether there is a particular custom or practice that although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." Jones v. Muskegon Cty., 625 F.3d 935, 946 (6th Cir. 2010) (quotation marks omitted). "A § 1983 plaintiff might not be able to demonstrate that a written policy exists, but he or she may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to

---

[2] King also notes that in response to a Freedom of Information Act request for records concerning the county's policies regarding repossession, the county stated that it had no such records. King asks the Court to conclude from this that there was a lack of training on this issue. However, as noted above, the department was only under a duty to conduct training for its officers if it was on notice due to a pattern of unconstitutional conduct. King has failed to allege any such past instances of misconduct. As a result, King's failure-to-train theory fails.

constitute a custom or usage with the force of law. Such a plaintiff must also show a direct causal link between the custom and the constitutional deprivation." McClendon v. City of Detroit, 255 F. App'x 980, 982 (6th Cir. 2007).

Once again, King relies solely on the alleged misconduct of the dispatcher and Defendant officers to establish Monell liability. For example, King notes that the dispatcher assured Everson that the officers were on their way and that she would stay on the line with him. Even assuming that this empathy towards Everson constituted misconduct, it does not plausibly establish a custom and practice of officers assisting in improper repossession. King also notes that each officer initially did nothing to stop Kahle's alleged false imprisonment and instead facilitated Everson's repossession. King argues that a custom or practice can be inferred from this alleged misconduct because each of the Defendant officers "acted in a consistent manner" at the scene. King urges the Court to infer that, because each officer assisted in the repossession, they were acting pursuant to a longstanding custom of assisting repossessions at the expense of debtors. But the officers' joint conduct at the scene, standing alone, is not a sufficient allegation of a custom or practice. Otherwise, every single episode of joint conduct, whether by a patrol unit of two officers or a larger group, would suffice to allege custom and practice. That would hardly satisfy the standard for plausibility. See Rolen v. City of Cleveland, No. 1:12 CV 1914, 2013 WL 12145960, at *3 (N.D. Ohio Aug. 7, 2013) ("Though the Sixth Circuit has yet to address the question, District Courts in this Circuit have uniformly found, in addressing dismissal of Monell claims, that the Iqbal plausibility requirement is not to be relaxed."). As a result, the Court dismisses King's § 1983 claim against Oakland County without prejudice.[3]

---

[3] Discovery or other avenues may yet reveal facts that would support Monell liability; if so, King may seek leave to amend to add such a claim.

Defendants next argue that the claims against David, Lewis, and Moldenhauer should be dismissed because the officers are entitled to qualified immunity. "[T]he doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Middaugh v. City of Three Rivers, 684 F. App'x 522, 526 (6th Cir. 2017) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, (1982)). "[T]he court makes two inquiries when resolving qualified immunity claims: (1) whether the facts, viewed in the light most favorable to the plaintiff, show a violation of a constitutional right, and (2) whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct. Cochran v. Gilliam, 656 F.3d 300, 306 (6th Cir. 2011) (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)). These inquiries can be addressed in any order. See Pearson v. Callahan, 555 U.S. 223, 236 (2009). When considering a motion to dismiss, "[t]he test is whether, reading the complaint in the light most favorable to the plaintiff, it is plausible that an official's acts violated the plaintiff's clearly established constitutional right." Heyne v. Metro. Nashville Pub. Sch., 655 F.3d 556, 562–563 (6th Cir. 2011).

King alleges that Defendant officers assisted Everson with the repossession of his vehicle, and that this assistance constituted a violation of the Fourth Amendment, which prohibits unreasonable searches and seizures, and the Fourteenth Amendment, which protects against the deprivation of property without due process of law. There is no dispute that Blackhawk, through its agent Everson, seized King's vehicle without any process. However, the protections afforded by the Fourth and Fourteenth Amendments apply "only [to] governmental action." Middaugh, 684 F. App'x at 527 (quoting United States v. Jacobsen, 466 U.S. 109, 113 (1984)).

The question in this case is "what level of police involvement transforms an otherwise private right of repossession into state action for constitutional purposes." Id. "Repossession cases fall 'along a spectrum of police involvement' from '[d]e minimis police involvement not constituting state action' to active police 'intervention or aid' sufficient for state action." Id. (quoting Hensley, 693 F.3d at 690–691). "To determine whether an officer's conduct transforms a private repossession into state action, our cases have looked for decades to the purpose and effect of the conduct, 'distinguish[ing] between conduct designed to keep the peace and activity fashioned to assist in the repossession.'" Id. (quoting Haverstick Enters., Inv. v. Fin. Fed. Credit, Inc., 32 F.3d 989, 995 (6th Cir. 1994)).

A police officer's mere presence at the scene of repossession is insufficient to constitute state action. Hensley, 693 F.3d at 689; see also Cochran, 656 F.3d at 310 (police officers not liable for private party's actions if they "merely stand by in case of trouble."); United States v. Coleman, 628 F.2d 961, 963 (6th Cir. 1980) (no state action where officers stayed in their car to observe the repossession and offered no encouragement or direction to the repossesor). However, officers begin acting under color of law "when they take an active role in a seizure or eviction and affirmatively intervene to aid the repossessor." Middaugh, 684 F. App'x at 527.

King has sufficiently alleged that Defendant officers affirmatively intervened to aid Everson. The complaint states that the officers arrived at the scene at the request of Everson, got out of their official vehicles, and began speaking with Everson, despite King's attempts to inform the officers that his vehicle was being wrongfully repossessed. After reviewing King's registration, the officers told King that he was behind on his car payments and that Everson was entitled to repossess his vehicle. In order to effectuate this repossession, the officers ordered Kahle and her dog out of the vehicle. According to the complaint, it was only after Kahle informed the officers that she was unable to exit the vehicle while it was off the ground that the

officers asked Everson to lower the vehicle. When Kahle and the dog exited the vehicle, the officers ordered Kahle and King to move away from the vehicle so that Everson could tow it away. All of this was done over King's objections. See Hensley, 693 F.3d at 689 ("Even without active participation, courts have found that an officer's conduct can facilitate a repossession if it chills the plaintiff's right to object.").

The Sixth Circuit's ruling in Hensley is instructive. In Hensley, the repossessor called the defendant officers to the plaintiffs' home to repossess a vehicle. The vehicle owner's wife and son both attempted to thwart the repossession; the son stood between the tow truck and vehicle and ordered the officers to leave the property, and the wife got into the vehicle. The officers responded by ordering the son to move out of the way of the tow truck and ignored his demands to leave the property. The officers told both the wife and son that the repossessor would be taking the vehicle, despite the wife's assertion that the car payments were up to date. The officers went as far as to break the window of the vehicle in an attempt to remove the wife.

Like in Hensley, the officers here arrived at the scene at the request of the repossessor. After speaking with Everson, the officers informed King that Everson would be taking the vehicle because King failed to make his payments. Further, the officers ordered Kahle out of the vehicle and ordered both King and Kahle to move away from the vehicle so that Everson could complete the repossession. This activity was much more than mere presence at the scene to keep the peace. The complaint alleges that Defendant officers actively intervened to effectuate the repossession, despite the fact that King, the lawful possessor of the vehicle, objected. All of this leads to the conclusion that King has sufficiently alleged that the officers were engaged in state action.

Because King has sufficiently alleged that Defendant officers participated in the seizure, it must be determined whether this seizure rose to the level of a constitutional violation.

9

Regarding King's Fourth Amendment claim, "[w]e are . . . left with the question of whether the seizure was unreasonable . . . the Supreme Court has said that the existence of a court order in a case such as this is a game-changer." Id. at 692. A fair reading of the complaint indicates that Everson and Defendant officers were not acting pursuant to a court order. Rather, Everson was engaged in self-help, and called Defendant officers to assist him after Kahle and King objected to the repossession. In regard to King's Fourteenth Amendment claim, procedural due process requires "notice and a prior hearing before a state can assist a secured creditor in the repossession of a debtor's property." Barrett v. Harwood, 189 F.3d 297, 301 (2d Cir. 1999). It is undisputed that there was no notice or a hearing prior to repossession.[4]

The Court must then determine whether the constitutional right at issue, i.e. the right to be free from police intervention during a repossession, was clearly established at the time of Defendant officers' actions. "The contours of the right must be sufficiently clear to inform a reasonable official that his conduct violates that right, but a prior ruling holding the precise action unlawful is not required." Hensley, 693 F.3d at 694. The right not to have property, in which the plaintiff has a lawful possessory interest, seized in violation of the Constitution has long been a clearly established right. Id. (citing Haverstick, 32 F.3d at 994). Most pertinent to this case, the Supreme Court's 1992 decision in Soldal v. Cook County, 506 U.S. 56 (1992) "confirms that state actors violate the Fourth Amendment by taking an active role in private evictions and repossessions when there is no apparent legal basis for such action." Hensley, 693 F.3d at 694; see also Cochran, 656 F.3d at 310 ("[I]n cases such as here where officers take an active role in a seizure or eviction, this Circuit has held they may no longer be entitled to

---

[4] Courts in this District have held that "[w]hen making a claim under 42 U.S.C. § 1983 for repossession of a vehicle, the inquiries for both the Fourth and Fourteenth Amendments are the same." Arnold v. Midwest Recovery, No. 09-CV-10371, 2011 WL 309000, at *7 (E.D. Mich. Jan. 27, 2011). However, this holding applies only to the issue of state action, not whether the state action actually constituted a violation of constitutional rights.

qualified immunity."). King's allegations regarding the lack of court order, notice, or hearing, if proved, demonstrate that there was no legal basis for Defendant officers to participate in the repossession of King's vehicle. These allegations sufficiently plead a violation of the right to be free from police intervention in repossession, a right that was clearly established at the time of the alleged misconduct. As a result, Defendant officers are not entitled to qualified immunity at this stage of the proceedings. See Heyne, 655 F.3d at 562–563 ("Just as we gauge other pleading-stage dismissals to determine only whether the complaint states a claim upon which relief can be granted . . . so we review an assertion of qualified immunity to determine only whether the complaint adequately alleges the commission of acts that violated clearly established law"); see also Wesley v. Campbell, 779 F.3d 421, 433–434 (6th Cir. 2015) ("Although an officer's entitle[ment] to qualified immunity is a threshold question to be resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12.").

## IV. CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion to dismiss (Dkt. 19) as to Oakland County, and denies the motion as to David, Lewis, and Moldenhauer.

SO ORDERED.

Dated: December 3, 2017       s/Mark A. Goldsmith
Detroit, Michigan       MARK A. GOLDSMITH
     United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 3, 2017.

     s/Karri Sandusky
     Case Manager